UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIDGETTE R. GRIFFITH,

        Plaintiff,

v.                                Case No. 12-15079

COMMISSIONER OF SOCIAL        HON. TERRENCE G. BERG
SECURITY,                          HON. LAURIE J. MICHELSON
        Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on Magistrate Judge Laurie J. Michelson's Report and Recommendation of February 14, 2014 (Dkt. 17), recommending that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that the findings and conclusions of the Commissioner be affirmed.

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the Report and Recommendation. 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections (Dkt. 18) to the Report and Recommendation; Defendant did not file any objections. A district court must conduct a de novo review of the parts of a Report and Recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

The Court has reviewed Magistrate Judge Michelson's Report and Recommendation, and Plaintiff's objections thereto. For the reasons set forth below, Plaintiff's objections are OVERRULED, and the Report and Recommendation is ACCEPTED and ADOPTED as the opinion of the Court. Consequently, the findings and conclusions of the Commissioner are AFFIRMED.

## ANALYSIS

**A. The Social Security Act**

The Social Security Act (the Act) "entitles benefits to certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant qualifies as disabled "if she cannot, in light of her age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Combs*, 459 F.3d at 642 (quoting 42 U.S.C. § 423(d)(2)(A)).

Under the authority of the Act, the Social Security Administration (SSA) has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id*. Those

2

> with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id*. § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id*. § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id*. § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id*. § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id*. § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id*.; § 404.1560(c)(1).

*Combs*, 459 F.3d at 642–43.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step, the burden transfers to the Commissioner. *See Combs*, 459 F.3d at 643. At that point, the

Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

Judicial review of the Commissioner's final decision is authorized pursuant to 42 U.S.C. § 405(g). If the Appeals Council denies review, then the ALJ's decision stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Judicial review, however, is circumscribed in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quotation marks omitted) (quoting *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)). This substantial evidence standard is less exacting than the preponderance of evidence standard. *See Bass*, 499 F.3d at 509 (citing *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 246 (6th Cir. 1996)). For example, if the ALJ's decision is supported by substantial evidence, "then reversal would not be warranted even if substantial evidence would support the opposite conclusion." *Bass*, 499 F.3d at 509.

## B. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff raises four objections to the Report and Recommendation, namely, that Magistrate Judge Michelson erred in not reversing the ALJ for failing: (1) to discuss the testimony of Plaintiff's mother in his written decision; (2) to properly account for Plaintiff's obesity; (3) to recognize Plaintiff's Asperger's syndrome to be a "severe impairment" at step two; and (4) to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Goleba. None of these objections warrants disturbing Magistrate Judge Michelson's recommendation.

Plaintiff first objects that Magistrate Judge Michelson should have concluded that the ALJ reversibly erred by not discussing the testimony of Plaintiff's mother in his written decision. In considering this argument, Magistrate Judge Michelson properly noted that the ALJ's failure to discuss Plaintiff's mother's testimony does not mean that this evidence was not considered. *See Kornecky v. Comm'r of Sec. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotation omitted); *Patrick v. Astrue*, 07-161, 2008 WL 3914921, at *3 (E.D. Ky. Aug. 19, 2008) ("20 C.F.R. § 404.1513(d)(4)[] merely states that the ALJ *may* use evidence from '[o]ther non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy)' to determine the severity of the impairment. . . . However, as stated by the Commissioner, the regulation does not indicate that the ALJ *must* state in his decision what credibility and weight he gave to [the] [p]laintiff's wife's

5

statements") (emphasis in original). Furthermore, in his decision, the ALJ extensively discussed the medical records he considered, and the weight he assigned to each piece of evidence. The ALJ adequately considered the record presented and was not required to specifically address testimony of Plaintiff's mother. In sum, Plaintiff has not shown that the ALJ reversibly erred in failing to discuss her mother's testimony in his written decision.

Turing next to Plaintiff's contention that the ALJ failed to properly account for Plaintiff's obesity, Magistrate Judge Michelson properly noted that "Social Security Ruling 02–01p does not mandate a particular mode of analysis," but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation. *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 577 (6th Cir. 2009), citing Social Security Ruling 02–1p, 2000 WL 628049. The ALJ did consider Plaintiff's obesity; he acknowledged that Plaintiff's obesity was a severe impairment at step and also explained:

> [Plaintiff] alleged that obesity is a severe impairment. The fact that obesity can cause limitation of function was considered. An individual may have limitations in any of the exertional functions such as standing, walking, lifting, etc. It also may affect ability to do postural functions such as climbing, stooping, kneeling or crawling. The ability to manipulate may be affected by the presence of fatty tissue in the hands and fingers. The functions likely to be limited depend upon many factors, including where the excess weight is carried. When evaluating [Plaintiff's] obesity as a severe impairment, the undersigned has given consideration to all the foregoing factors during the sequential evaluation at Step 3, Step 4 and Step 5, and has given consideration to Social Security Ruling 02–1p, which supersedes Social Security Ruling 00–3p.

Magistrate Judge Michelson also correctly noted that "aside from perhaps Dr. Goleba's opinions, there is little evidence that [Plaintiff's] obesity significantly exacerbated her other impairments or, if it did, that the resulting limitations were greater than those in the ALJ's residual functional capacity" (Dkt. 17 at 35), citing *Smith v. Astrue*, 639 F. Supp. 2d 836, 846 (W.D. Mich. 2009) (declining to remand under S.S.R. 02–01p where the plaintiff did not carry her "burden of marshaling competent medical opinion and evidence to show specifically how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work."); *cf. Essary v. Comm'r of Soc. Sec.*, 114 Fed. App'x 662 (6th Cir. 2004); *Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. App'x 852 (6th Cir. 2003). As to Dr. Goleba's opinion, the ALJ reasonably gave it "little weight," as described in more fully below. In sum, Magistrate Judge Michelson correctly concluded Plaintiff that has not shown that the manner that the ALJ considered her obesity resulted in reversible error.

Third, Plaintiff objects to Magistrate Judge Michelson conclusion that the ALJ did not reversibly err in failing to recognize Plaintiff's Asperger's Syndrome as a severe impairment at step two. Magistrate Judge Michelson "agree[ed] with [Plaintiff] that the ALJ erred in concluding that her Asperger's Syndrome was not a severe impairment. But…conclude[d] that [Plaintiff] has not shown that this error resulted in a flawed step-three analysis or a flawed residual functional capacity Assessment" (Dkt. 17 at 21). This analysis is sound. Plaintiff objects that, because

7

the ALJ incorrectly concluded that she did not have a confirmed diagnosis of Asperger's Syndrome, the ALJ did not "evaluate[] the issues of 'inappropriate peer interactions' or 'trouble maintaining focus'" in developing Plaintiff's RFC (Dkt. 18 at 7-8). However, the ALJ specifically found that Plaintiff's dysthymia, anxiety, obesity, anemia, polycystic ovarian syndrome, mild osteoarthritis of the knee and degenerative disc disease qualified as severe impairments (Tr. 12). Plaintiff therefore cleared step two of the analysis. This caused the ALJ to consider Plaintiff's severe and non-severe impairments in the remaining steps of the sequential analysis. The fact that some of Plaintiff's impairments were not deemed to be severe at step two is therefore legally irrelevant, because her Asperger's condition was still being considered at the subsequent steps of the analysis. *See Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe).

    Here, the ALJ's RFC assessment reasonably accounts for Plaintiff's Asperger's symptoms. In particular, the ALJ limited Plaintiff to "contact with others [that] is routine, superficial, and incidental to the work performed" (Tr. 15). The ALJ, therefore, did not commit reversible error by not recognizing Plaintiff's Asperger's as a severe impairment at step two, as the ALJ accounted for Plaintiff's Asperger's in the remaining steps of the sequential evaluation.

Finally, Plaintiff objects that Magistrate Judge Michelson did not reverse the ALJ based on his analysis concerning Plaintiff's treating physician, Dr. Goleba. This objection is also without merit. In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. *See* SSR 96–2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Therefore, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544. When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id*. However, in all cases there

remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. *See* SSR 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight").

There is an additional procedural requirement associated with the treating physician rule. Specifically, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. at *5. The purpose of this procedural aspect of the treating physician rule is two-fold. First, the explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id*.

Magistrate Judge Michelson correctly concluded that that the ALJ gave a "good reason" for discounting Dr. Goleba's opinion, specifically: it was inconsistent with her opinion from just six months earlier and Dr. Goleba did not explain the inconsistencies or support her new limitations with her medical records (Tr. 18).

10

The ALJ's decision to give Dr. Goleba's opinion "little weight" was both reasonable and adequately explained.

## CONCLUSION

For the reasons set forth above,

It is hereby ORDERED that Magistrate Judge Michelson's Report and Recommendation of February 14, 2014 (Dkt. 17) is ACCEPTED and ADOPTED.

It is FURTHER ORDERED that Plaintiff's motion for summary judgment (Dkt. 13) is DENIED and Defendant's motion for summary judgment (Dkt. 15) is GRANTED.

It is FURTHER ORDERED that the findings and conclusions of the Commissioner are AFFIRMED.

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

Dated: March 24, 2014

## Certificate of Service

I hereby certify that this Order was electronically submitted on March 24, 2014, using the CM/ECF system, which will send notification to each party.

By: s/H. Monda for A. Chubb  
Case Manager
